# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CURTIS BAKER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 15-1674 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| MOON AREA SCHOOL DISTRICT, *et al.*, | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

This case was referred to United States Magistrate Judge Lisa Pupo Lenihan for pretrial proceedings in accordance with the Magistrates Act, 28 U.S.C. §§ 636(b)(l)(A) and (B), and Rules 72.C, 72.D and 72.G of the Local Rules for Magistrate Judges.

On July 2, 2018, the Magistrate Judge issued a Report and Recommendation (hereinafter the "Report," Doc. 61) recommending that Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 21) be granted as to Plaintiff's 42 U.S.C. § 1983 Due Process claim ("Count I") and that the Court decline to exercise supplemental jurisdiction over the remaining state law claims. Plaintiff timely filed Objections to the Report (Doc. 62) and Defendants timely filed a Response in Opposition to Plaintiff's Objections (Doc. 63).

This Court has conducted a *de novo* review of the issues raised by Plaintiff's Objections and Defendants' Response, together with the Report.

## INTRODUCTION

The Fourteenth Amendment prohibits a state from depriving persons of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. The question at the core of this litigation is whether the Moon Area School District ("MASD") and its Board of Directors

(the "Board") provided Plaintiff, MASD's former superintendent, with constitutionally sufficient procedural protections before and after his deprivation of a protected property interest. To survive Defendants' Motion to Dismiss as to Count I, Plaintiff's Amended Complaint must merely allege sufficient facts to allow the Court to plausibly infer that Plaintiff was deprived of a protected interest without due process. Taking all of Plaintiff's well-pleaded factual allegations as true, Plaintiff has alleged sufficient facts to imply that he was deprived of a protected property interest—his continued public employment—without the pre-deprivation process to which he was constitutionally entitled. As a result, for the reasons discussed below, the Court will adopt the Report's recommendation in part and reject the Report's recommendation in part.

**BACKGROUND**

The Court adopts the "Relevant Facts" section of the Report and incorporates that section as if fully stated herein. For ease of reference, the Court will refer to Defendants Gerald Testa, Michael A. Hauser, James A. Bogatay, Robert E. Harper, Mark Scappe, Lisa A. Wolowicz, and Daniel Zieger collectively as the "Board member Defendants."

**ANALYSIS**

The Amended Complaint contains five Counts requesting relief: (I) under 42 U.S.C. § 1983, that all Defendants violated Plaintiff's Fourteenth Amendment rights by depriving him of protected property and liberty interests without due process of law;[1] (II) under Pennsylvania common law, that MASD breached his employment contract; (III) under 65 Pa. C.S. § 701, *et seq.*, that all Defendants violated the Pennsylvania Sunshine Act; (IV) under Pennsylvania common law, that the Board member Defendants tortiously interfered with Plaintiff's contract;

---

[1] The Amended Complaint cites both the Fourteenth and Fifth Amendments—however, as the Report correctly notes and the Court now finds, the Fifth Amendment has no application to Plaintiff's claims against Pennsylvania entities. (Report 13 n.5.)

and (V) under the Dragonetti Act, 42 Pa. C.S. § 8351, *et seq.*, that Defendants Gerald Testa and

Michael A. Hauser wrongfully used civil proceedings against Plaintiff.[2]  (Amended Complaint

¶¶ 104-72.)

Plaintiff objects to the Report's recommendation to grant Defendants' Motion to Dismiss

as to Count I on three grounds—that the Report erroneously: credits Defendants' version of the

facts in several important instances, finds that Plaintiff fails to plead a plausible due process

claim, and finds that Plaintiff fails to plead the deprivation of a protected liberty interest.  (See

generally Objections to the Report.)  Plaintiff also requests oral argument.[3]  (Id. at 9.)  The Court

will address Plaintiff's objections by analyzing Plaintiff's claims, in sequence, in light of all the

documents of record in this case.

**I. Section 1983 Due Process**

As an initial matter, Plaintiff's due process claim raises distinct pre-deprivation and post-

deprivation constitutional concerns.  It is important for the Court to specify when the earliest

alleged deprivation of a protected property interest occurred.[4]  This distinction is necessary to

allow the Court to gauge whether any given process occurred pre- or post-deprivation.  There are

---

[2] The Amended Complaint asserts claims against the individual Board member Defendants in their individual and official capacities.  However, "[i]n a suit against a government official in his official capacity, 'the real party in interest . . . is the governmental entity and not the named official.'"  Smith v. Sch. Dist. of Philadelphia, 112 F. Supp. 2d 417, 424-25 (E.D. Pa. 2000) (quoting Hafer v. Melo, 502 U.S. 21, 25 (1991)).  Accordingly, the Court will treat all claims asserted against Defendants Testa, Hauser, Bogatay, Harper, Scappe, Wolowicz, and Zieger in their official capacities as claims asserted against MASD.

[3] The undersigned's Practices and Procedures state that "[o]ral argument is only granted on selected, factually or legally complex matters."  Practices and Procedures of Judge Cathy Bissoon.  As the instant motion presents no unusually complex factual or legal matters, the request for oral argument is denied.

[4] As the Court will explain below, Plaintiff has failed to allege a deprivation of protected liberty interest because Plaintiff has failed to allege that Defendants made any sufficiently stigmatizing statements.  The parties agree that Plaintiff has a protected property interest in his public employment.

two candidates for the earliest relevant deprivation: Plaintiff was placed on paid leave, with a suspension of his contributions to the Public School Employees' Retirement System, on December 7, 2015. (Amended Complaint ¶¶ 70, 82.) And, Plaintiff was placed on suspension without pay on February 1, 2016. (Id. at ¶ 91.)

The scope of a public employee's property interest in continued employment is defined by state law. Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005). As a result, state law answers the question of what an employee's property right includes, and federal constitutional law answers the question of what pre-deprivation process is due. McDaniels v. Flick, 59 F.3d 446, 458 (3d Cir. 1995). If sources of state law reveal that a superintendent's paid suspension is treated as a deprivation of a state-created right, then the superintendent's property interest extends to paid suspension.

As Plaintiff was a district superintendent, Plaintiff's employment contract and Pennsylvania's Public School Code provide, respectively, protections against "discharge . . . [or] dismissal," (Exhibit A to Amended Complaint ¶ 8, Doc. 19-1), and "remov[al] from office," 24 P.S. § 10-1080, absent cause. Neither source addresses grounds for suspension, implying that the power to suspend must come from elsewhere. Pennsylvania case law on a school board's power to suspend a superintendent, with or without pay, is relatively thin. One case, Antonini v. Western Beaver Area School District, 874 A.2d 679 (Pa. Commw. Ct. 2005), provides the most thorough treatment of this issue.[5] In Antonini, the court addressed whether a school board has

---

[5] Another case, Burger v. Board of School Directors of the McGuffey School District, 576 Pa. 574 (2003), is relevant. In Burger, the Pennsylvania Supreme Court "h[e]ld that a school board may implement interim suspensions with or without pay in appropriate circumstances in the face of allegations of serious misconduct on the part of a superintendent." Id. at 585. The state Supreme Court also expanded the scope of its holding in Rike v. Commonwealth, 508 Pa. 190 (1985), by explicitly finding that Rike's reasoning underlying a school board's implied

"implied authority" or a "managerial prerogative" to suspend a superintendent, and also

addressed the circumstances in which such a power could be properly exercised. Id. at 683. The

court "specifically reject[ed] the School Board's assumption that its 'managerial prerogative' to

suspend with pay is generally available." Id. Instead, the court found that "resort to procedures

beyond those specified in the School Code is the exception rather than the rule, reserved for

allegations of 'serious misconduct.' It is the seriousness of the misconduct alleged that forms the

necessity for the implied power." Id. Based on the gravity with which Pennsylvania courts have

treated suspensions of public school employees and their particularly cautious construction of

school boards' powers to suspend superintendents—including limiting their power to suspend

with pay—the Court finds that Pennsylvania treats a superintendent's right to continued

employment without suspension (even paid suspension) as a property right. Cf. Damiano v.

Scranton Sch. Dist., 135 F. Supp. 3d 255, 271-72 (M.D. Pa. 2015) (because public school teacher

suspended with pay suffered no economic burden, minimal pre-suspension procedures were

sufficient to meet due process requirements). Put differently, Plaintiff has a legitimate

expectation of continued employment without suspension by virtue of his contract and

Pennsylvania law. Cf. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538-40 (1985) (the

contours of property rights to state employment are created by sources of state law). The Court

thus finds that the earliest relevant deprivation of a protected property interest was Plaintiff's

paid suspension on December 7, 2015.

---

"authority to impose lesser forms of discipline than complete termination," id. at 195, "applies
equally to school teachers and superintendents," Burger, 576 Pa. at 584.

*A. Pre-Deprivation Due Process*

As to whether Plaintiff's pre-deprivation process was sufficient under the Constitution,

Plaintiff alleges that he was afforded no pre-deprivation process at all. Plaintiff alleges that he

received no form of notice and had no opportunity to be heard before his initial suspension.

(Amended Complaint ¶¶ 68, 72.)

In some cases, no pre-deprivation process is all that is constitutionally due. See, e.g.,

Gilbert v. Homar, 520 U.S. 924, 930 (1997) ("where a State must act quickly, or where it would

be impractical to provide predeprivation process, postdeprivation process satisfies the

requirements of the Due Process Clause"); FDIC v. Mallen, 486 U.S. 230, 240 (1988) ("An

important government interest, accompanied by a substantial assurance that the deprivation is not

baseless or unwarranted, may in limited cases demanding prompt action justify postponing the

opportunity to be heard until after the initial deprivation.").

However, Plaintiff alleges sufficient facts to show that this is not one of those cases. For

example, this is not a case like Jerrytone v. Musto, 167 F. App'x 295 (3d Cir. 2006), in which the

Court of Appeals found that a teacher placed on paid leave was entitled to no pre-deprivation

process "after allegations of serious misconduct and criminal activity in his classroom," which

included "allegations that he had allowed students to smoke marijuana in the classroom and

behaved inappropriately with female students." Id. at 297, 301. Plaintiff's allegations do not

reveal an urgent motivation supporting his suspension at the time the new Board took office on

December 7, 2015.

The Court need not decide precisely what pre-deprivation process was due in order to

conclude that, based on Plaintiff's factual allegations, more than nothing was constitutionally

required. Under Matthews v. Eldridge, 424 U.S. 319 (1976), the Court must weigh: Plaintiff's

interest in his continued employment; the risk that the procedures MASD used would

erroneously deprive Plaintiff of that interest; the probable value of additional procedures; and

MASD's interests, including fiscal and administrative burdens. Id. at 335; see also Biliski v. Red

Clay Consol. Sch. Dist. Bd. of Educ., 574 F.3d 214, 220 (3d Cir. 2009).

While Plaintiff's interest in continuing his functions as superintendent, as opposed to

taking suspension with pay, is relatively weak, the risk of erroneous deprivation absent any

procedural safeguards is high, and the probable value of additional procedures is high. The gist

of Plaintiff's pre-deprivation due process claim is that Plaintiff's suspension was unrelated to a

legitimate cause and Plaintiff never had a pre-deprivation opportunity to contest his suspension.

Given Plaintiff's claim that the stated basis for his suspension was "alleged yet unspecified

misconduct," (Amended Complaint ¶ 68), the Court can plausibly conclude that prior notice of

the specific misconduct alleged against Plaintiff and an opportunity to respond would have

provided a much lower risk of erroneous deprivation. Further, Plaintiff's Amended Complaint

sufficiently implies that the government's interest in prompt suspension was low (given the

ambiguous nature of the alleged misconduct)[6] and the Amended Complaint states no facts

suggesting that the administrative or fiscal burden of providing such procedures would be

---

[6] Taking Plaintiff's allegations as true and drawing all reasonable inferences in Plaintiff's favor, the allegations of "unspecified misconduct" against Plaintiff are not comparable to the types of misconduct (such as sexual misconduct) that have been found to be sufficiently serious to require prompt suspension without notice in analogous circumstances. Compare id. at 681, 683 (allegations of improperly delayed construction and improperly transferred funds were insufficiently serious to require prompt suspension), with Burger, 576 Pa. at 577, 584 (a superintendent's sexual harassment of his administrative assistant was sufficiently serious). This finding is contrary to the Report's finding that the allegations against Plaintiff, as reflected in the Amended Complaint, were sufficiently serious to require prompt suspension. (See Report 31.) The letter provided to Plaintiff a month after his suspension alleges misconduct that is comparable to improper handling of funds, not to sexual harassment or similarly serious activity. (See Exhibit K to Amended Complaint, Doc. 19-11.)

onerous.[7] See Loudermill, 470 U.S. at 544-45 ("in those situations where *the employer perceives a significant hazard* in keeping the employee on the job, it can avoid the problem by suspending with pay") (emphasis added).  Thus, on balance, the Court finds that the Amended Complaint states sufficient facts to tilt the Eldridge factors toward the need for pre-deprivation process.

For purposes of the instant Motion to Dismiss, this is sufficient for Plaintiff's claim at Count I to survive to the extent that claim is based on a lack of pre-deprivation due process related to Plaintiff's property interest in his continued employment.

As to Plaintiff's claim concerning his protected liberty interest, such a claim requires an allegation that Plaintiff's employer created a "stigma" by publicly "creat[ing] and disseminat[ing] a false and defamatory impression about the employee in connection with his termination."  Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir. 2006).  Public statements alleging poor job performance are insufficient as a matter of law to create the requisite stigma.  Kohn v. Sch. Dist. of Harrisburg, 817 F. Supp. 2d 487, 499 (M.D. Pa. 2011).  As the Report correctly concludes, Plaintiff has made no allegations that suggest discovery will reveal public statements that go beyond allegations of poor job performance.  Plaintiff's Objections fail to cite any cases indicating that Plaintiff's allegations are sufficient to show stigma.  Accordingly, the Court adopts the Report's recommendation as to Count I to the extent it counsels dismissal of Plaintiff's claim based on deprivation of a protected liberty interest.[8]

---

[7] Further, in arguing that no pre-suspension process was required, Defendants' Brief Supporting their Motion to Dismiss (Doc. 22) cites cases in which school boards became aware of serious misconduct and then took prompt action to suspend an employee.  E.g., Jerrytone, 167 F. App'x 295; Burger, 576 Pa. 574.  However, Plaintiff alleges the reverse order of events: MASD took prompt action to suspend him without specific allegations of misconduct, and then later compiled a list of alleged improprieties.  (Amended Complaint ¶¶ 68, 72, 83.)

[8] As discussed in the Report, the relevant allegations are that Plaintiff was publicly accused "of dereliction of duty," "of violating the Sunshine Act in negotiating [a] lease," and of being "the

*B. Post-Deprivation Due Process*

The Report concludes, in essence, that Plaintiff failed to avail himself of the processes afforded him after his suspension, and that he cannot now claim that he was deprived of that process. Given the allegations in the Amended Complaint and facts of which this Court may properly take notice, the Court reaches a similar conclusion. However, for the reasons discussed below, the Court will grant Plaintiff leave to file a second amended complaint.

The following series of events is relevant to resolving Plaintiff's ability to plead that he was denied post-deprivation due process. After the initial paid suspension on December 7, 2015, Plaintiff filed this lawsuit on December 18, 2015. Plaintiff then received a notice from MASD on January 6, 2016 containing allegations against him and informing him of a hearing scheduled for January 11, 2016. (Amended Complaint ¶ 83.) Plaintiff's counsel responded in writing to the allegations made against him on January 11, 2016. (Id. at ¶ 90.) Despite the fact that the January 6, 2016 notice stated that "the Board of School Directors believes you should have the opportunity to respond, verbally or in writing, to the allegations of misconduct," (Id. at Exhibit K), MASD notified Plaintiff on or about February 1, 2016 that he had been placed on *unpaid* leave because he failed to attend the January 11, 2016 hearing in person. (Id. at ¶¶ 91, 93.) On March 14, 2016, MASD voted to approve formal termination proceedings against Plaintiff. (Id. at ¶ 100.) Plaintiff filed the Amended Complaint on April 4, 2016.

While this information is outside the scope of the Amended Complaint, the Report properly took judicial notice of the fact that formal hearings before the Board of School Directors for MASD were held in January and February 2017, culminating in a formal

---

most controversial superintendent in Moon History." (Report 17-18 (quoting Amended Complaint ¶¶ 38, 41, 58, 60, 62).)

adjudication (Doc. 46-1), which Plaintiff did not appeal to state court.  See S. Cross Overseas

Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999) ("[t]o

resolve a 12(b)(6) motion, a court may properly look at public records, including judicial

proceedings, in addition to the allegations in the complaint . . . not for the truth of the facts

recited therein, but for the existence of the opinion").

 Given the timing of the Amended Complaint, the sequence of events above shows that

Plaintiff's argument concerning post-deprivation due process is premature.  "If there is a process

on the books that appears to provide due process, the plaintiff cannot skip that process and use

the federal courts as a means to get back what he wants."  Alvin v. Suzuki, 227 F.3d 107, 116

(3d Cir. 2000).  Under Pennsylvania's Local Agency Law, MASD's adjudication could have

been appealed to the Court of Common Pleas, 2 Pa. C.S. § 752, and yet Plaintiff failed to do so.

Plaintiff argues that he did not skip the relevant process; rather, the delay in obtaining the

statutorily required formal hearing constitutes a post-deprivation due process violation.[9]  (See

Objections to Report 5.)  However, in part because the formal hearing occurred after Plaintiff

filed the Amended Complaint, the Amended Complaint states no facts that would permit the

Court to infer that the length of the delay was unjustified in light of his interests, MASD's

interests, and the risk that the suspension was based on mistaken premises.[10]  See Mallen, 486

U.S. at 242 ("In determining how long a delay is justified, in affording a post-suspension hearing

and decision, it is appropriate to examine the importance of the private interest and the harm to

this interest occasioned by the delay; the justification offered by the Government for the delay

---

[9] Plaintiff does not argue that the state appeals process would have been futile.
[10] The Amended Complaint was filed only three weeks after MASD voted to initiate formal
termination proceedings; approximately three months elapsed between Plaintiff's initial paid
suspension and MASD's vote to initiate formal termination proceedings.

and its relation to the underlying governmental interest; and the likelihood that the interim decision may have been mistaken."); Hill v. City of Scranton, 411 F.3d 118, 134 (3d Cir. 2005) (complaint must allege "the cause of the delay" to survive a motion to dismiss).

As indicated in the Report, Plaintiff's allegations fail to state a claim for a post-deprivation due process violation based on the delay in formal proceedings. However, the Court disagrees with the Report that granting Plaintiff leave to amend would be futile. Such leave would provide Plaintiff with his first opportunity to allege properly any facts suggesting that the actual delay he experienced was unjustified. Accordingly, the Court will grant Defendants' Motion to Dismiss as to Plaintiff's post-deprivation due process claim at Count I, without prejudice to Plaintiff filing a second amended complaint that addresses the cause of the delay.

## II. Breach of Contract

Plaintiff alleges that MASD breached provisions of his employment contract concerning his access to documents at specific times, his opportunity to respond to allegations against him at specific times, the privacy of the investigation, and his contractually due privileges and processes. (Amended Complaint ¶¶ 126-134.) Defendants make two arguments that these claims should be dismissed. First, they argue that they did not breach the contract because the contract's requirements concerning Plaintiff's access to documents apply only prior to the conclusion of an investigation, and their investigation had not yet concluded at the time of the Amended Complaint. (Defendants' Brief Supporting MTD 16-17.) Second, Defendants argue that, while the contract requires certain procedural protections prior to termination, the termination process had not yet begun when Plaintiff filed the Amended Complaint, and thus Plaintiff's claim was premature. (Id. at 17.)

Both of Defendants' arguments rely on factual allegations beyond the pleadings concerning the timing and nature of events during MASD's investigation and the termination process. The Court finds that these matters are better evaluated at the summary judgment stage.[11] See Murphy v. Duquesne Univ. of the Holy Ghost, 777 A.2d 418, 430 (Pa. 2001) (determining whether a contract is ambiguous is not done in a vacuum but by applying the subject terms to a particular set of facts); see also Masciantonio v. SWEPI LP, 2014 WL 4441214, at *6 n.5 (M.D. Pa. Sept. 9, 2014) ("[i]f a writing is not ambiguous, it is appropriate for a district court to resolve the issue of contract interpretation as a matter of law, but typically on summary judgment rather than a motion to dismiss"). Having reviewed the documents of record and having fully considered the parties' respective arguments in this regard, the Court finds that, at this procedural juncture, Plaintiff's breach of contract allegations in the Amended Complaint are facially plausible. Accordingly, the Court will not dismiss Count II at this time.

**III. Sunshine Act**

Plaintiff alleges that MASD and the individual Board members violated the Sunshine Act, 65 Pa. C.S. § 701 et seq., (1) by failing to provide a reason for the Executive Session held on December 7, 2015; (2) by conducting this session without 24-hours advance notice; and (3) by conducting a private meeting before December 7, 2015, with a quorum of the Board, to discuss personnel issues. (Amended Complaint ¶¶ 138-149.) Defendants argue that the plain language of the Sunshine Act, as applied to the facts alleged in the Amended Complaint, demonstrates (1) that the Board was permitted to provide the reason for the Executive Session following the session; (2) that the 24-hour notice requirement does not apply to the December 7,

---

[11] Indeed, as suggested by the Report on page 40, subsequent events outside the scope of the pleadings may have rendered this claim moot. The Court expresses no opinion on this matter at this stage.

2015 Executive Session; and (3) that the newly elected Board members could not have met as a quorum prior to their swearing-in on December 7, 2015 because they would not have been Board members prior to that event. (Defendants' Brief Supporting MTD 18-19.) Plaintiff does not respond directly to these arguments, but argues that the Amended Complaint avers that Defendants made statements indicating animus and prejudgment against him and that discovery may reveal additional relevant facts. (Plaintiff's Brief Opposing MTD 7-8, Doc. 28.)

The Court agrees with Defendants that the plain language of the Sunshine Act, as applied to the facts in the Amended Complaint, shows that Plaintiff has failed to state a claim for a violation based on grounds (1) and (3) above, but disagrees as to ground (2). Pennsylvania's Sunshine Act defines an "[e]xecutive session" as "[a] meeting from which the public is excluded" and defines a "meeting" as "[a]ny prearranged gathering of an agency which is attended or participated in by a quorum of the members of an agency held for the purpose of deliberating agency business or taking official action." 65 Pa. C.S. § 703. Agencies may hold executive sessions "[t]o discuss any matter involving the employment, appointment, termination of employment, terms and conditions of employment, evaluation of performance, promotion or disciplining of any specific . . . current public officer or employee employed or appointed by the agency." 65 Pa. C.S. § 708(a)(1).

As to ground (1), the Sunshine Act states that "[t]he reason for holding the executive session must be announced at the open meeting occurring immediately prior or subsequent to the executive session." 65 Pa. C.S. § 708(b). The Amended Complaint states that "[a]fter returning from Executive Session, the Board made a last-minute addition to the meeting agenda, namely, the placement of Mr. Baker on administrative leave." (Amended Complaint ¶ 76.) In other words, the Amended Complaint alleges that the reason for the executive session was announced

at the open meeting immediately subsequent to the executive session. This post-session notice is explicitly allowed by the plain language of the Sunshine Act. Therefore, the Court finds that Plaintiff has failed to allege facts that could show a violation as to ground (1).

Likewise, as to ground (3), the Sunshine Act defines a "meeting" in relevant part as a "gathering of an agency . . . by a quorum of the members of an agency." 65 Pa. C.S. § 703. Plaintiff alleges that "[o]n December 7, 2015, Defendants Bogatay, Harper, Scappe, Wolowicz, and Zieger were sworn in as Board Members." (Amended Complaint ¶ 76.) Prior to December 7, 2015, they were not members of the school board, and were not members of the agency. (See id. at ¶ 43-45.) It follows that any gathering of the individual Board member Defendants prior to December 7, 2015 could not have been a gathering of a quorum of members of the agency—such a gathering would not have been a "meeting" under the Sunshine Act. The Court finds that Plaintiff has failed to state a claim for a violation of the Sunshine Act as to any pre-December 7, 2015 gathering.

As to ground (2), the Court disagrees with Defendants' interpretation of the Sunshine Act's 24-hour notice requirement. The law requires that "[i]f the executive session is not announced for a future specific time, members of the agency shall be notified 24 hours in advance of the time of the convening of the meeting." 65 Pa. C.S. § 708(b). Plaintiff alleges that "[t]he newly seated Board would not have twenty-four hours in which to give notice of a meeting at which an executive session was to occur," (Amended Complaint ¶ 148), and the Court can infer that the executive session that was held on December 7, 2015 by the newly seated Board had not been announced at a prior meeting. Therefore, the Court finds that Plaintiff has sufficiently pleaded a violation of the Sunshine Act as to ground (2).

**IV. Tortious Interference with Contract**

The individual Board member Defendants argue that they are absolutely immune from suit for their official acts undertaken as Board members by virtue of Pennsylvania law.  42 Pa. C.S. § 8546(3) (local agency employees are immune if "the act of the employee which gave rise to the claim was within the policymaking discretion granted to the employee by law. . . . [A]ll acts of members of the governing body of a local agency . . . are deemed to be within the policymaking discretion granted to such person by law.").  They also argue that, to the extent that Plaintiff's claim is based on pre-Board actions, the Noerr-Pennington Doctrine provides immunity from liability.  (Defendants' Brief Supporting MTD 20.)

The Court agrees with Defendants, and finds that the individual Board members are immune both for their official actions as Board members and their pre-Board actions as private citizens campaigning to alter government policy.

As to Defendants' actions as Board members, school Board members qualify as "high public officials" under Pennsylvania law and have absolute immunity for intentional torts, such as defamation and retaliatory discharge, committed in the course of, and within the scope of, their authority.  Zugarek v. S. Tioga Sch. Dist., 214 F. Supp. 2d 468, 479-80 (M.D. Pa. 2002); cf. Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist., 442 F. App'x 681, 689 (3d Cir. 2011) ("If the statements were made in the School's official capacity, the school officials who made them are protected by high official immunity under Pennsylvania state law.").  To the extent that Plaintiff's claim against the individual Board members is based on their official actions relating to Plaintiff's suspension, Plaintiff's claim is clearly barred by high official immunity.

As to Defendants actions as private citizens while Plaintiff served as the MASD superintendent, the Noerr-Pennington Doctrine shields them from liability.  As noted in the Amended Complaint, one of the elements of a successful claim for tortious interference is the absence of privilege or justification on the part of the defendants.  (Amended Complaint ¶ 151 (quoting Kernaghan v. BCI Commc'ns., Inc., 802 F. Supp. 2d 590, 596 (E.D. Pa. 2011)).)  The Noerr-Penington Doctrine, as applied in contexts like this, creates a valid justification for contractual interference in order to "protect[] the right to petition" the government to change its policies.  WE, Inc. v. City of Philadelphia, 174 F.3d 322, 327 (3d Cir. 1999).  The Court of Appeals for the Third Circuit has held that, for Pennsylvania intentional torts like tortious interference with a contract, "[a]ction is not improper when the interference in contractual relations fosters a social interest of greater public import than is the social interest invaded." Brownsville Golden Age Nursing Home, Inc. v. Wells, 839 F.2d 155, 159 (3d Cir. 1988).  Thus, there is a general "rule that liability cannot be imposed for damage caused by inducing legislative, administrative, or judicial action."  Id. at 160.  Providing "[i]mmunity from liability is necessary so as not to chill the exercise of [the right to petition]."  WE, Inc., 174 F.3d at 327. Plaintiff's allegations concerning interference with his employment contract stem from the fact that Defendants "ran for School Board with the intent to separate Mr. Baker from his employment with MASD" and discussed the actions that they would take against him prior to taking office.  (Amended Complaint ¶¶ 155-58.)  Exposing Defendants to liability for their successful actions to organize a democratic campaign against MASD's policies, including its employment of Plaintiff, would run afoul of the robust protection for political organizing provided by the Noerr-Pennington Doctrine.  The fact that Defendants themselves became members of the government they sought to change, and were able to carry out their proposals

through official actions, serves to emphasize the importance of these protections. The Court

finds that Defendants are immune as to this claim, and will dismiss this claim with prejudice.

### V. Dragonetti Act

As Defendants correctly argue, a violation of the Dragonetti Act, 42 Pa. C.S. § 8351,

requires—among other elements—that "the proceedings have terminated in favor of the person

against whom they are brought." Id. "[M]ootness, like the impossibility of bringing an accused

to trial, which occasions a voluntary withdrawal, can not constitute a termination in favor of the

party against whom a lawsuit is brought." Rosenfield v. Pennsylvania Auto. Ins. Plan, 636 A.2d

1138, 1142 (Pa. Super. Ct. 1994). The Amended Complaint alleges that, prior to the election of

the new MASD Board that favored reopening Hyde Elementary School, Defendants Testa and

Hauser filed a complaint against Plaintiff seeking declaratory and injunctive relief to reverse

MASD's decision to close Hyde Elementary School. (Amended Complaint ¶¶ 164-67.) The

Amended Complaint also alleges that Defendants eventually withdrew their lawsuit. (Id. at ¶

170). Under these circumstances, Plaintiff's claim fails to raise a plausible inference that

discovery will reveal that the prior litigation was withdrawn for a reason other than mootness.

Accordingly, Plaintiff has failed to plead a claim for a violation of the Dragonetti Act. While the

Court will dismiss this claim, the Court will grant Plaintiff leave to amend in order to allege any

facts bearing on why the prior litigation would not be moot at the time of its voluntary

withdrawal.

\* \* \*

Accordingly, Defendants' Motion to Dismiss Plaintiff's Amended Complaint (**Doc. 21**) is

**GRANTED** in part and **DENIED** in part. Specifically, the Motion is **GRANTED** as to:

- Count I, to the extent that claim is based on a protected liberty interest or the process following Plaintiff's alleged deprivation of a protected property interest;

- Count III, to the extent that claim is based on violations of the Pennsylvania Sunshine Act other than the 24-hour notice requirement in 65 Pa. C.S. § 708(b);

- Count IV; and

- Count V.

The Motion is **DENIED** as to the remainder of Counts I and III, and as to Count II. Count I is **DISMISSED** with prejudice to the extent that this claim is based on the assertion of a protected liberty interest for the reasons stated in the Report. Count III is **DISMISSED** with prejudice, to the extent that claim is based on Pennsylvania Sunshine Act Violations other than the 24-hour notice requirement in 65 Pa. C.S. § 708(b), because amendment would be futile in light of Plaintiff's present allegations. Count IV is **DISMISSED** with prejudice because the Court finds that Defendants are immune as to this claim. Count V is **DISMISSED** without prejudice.

Plaintiff may file a second amended complaint on or before **September 7, 2018**. Failure to file a second amended complaint on or before that date will result in the dismissal with prejudice of all claims dismissed without prejudice herein. As Plaintiff has had an opportunity to amend, and as this litigation has already been delayed, this shall be Plaintiff's last and final opportunity to amend his complaint. See generally Taylor v. Pilewski, 2008 WL 4861446, *3 (W.D. Pa. Nov. 7, 2008) ("[the c]ourt need not provide endless opportunities" for amendment, especially where such opportunity already has been enjoyed); Houser v. Postmaster Gen. of U.S., 573 F. App'x 141 (3d Cir. 2014) (affirming dismissal without leave to amend, based on court's finding that "[it] would be inequitable to require [the d]efendant, who already once ha[d] exhaustively and successfully defended [the p]laintiff's grievances, to respond to a continuous stream of formal and informal attempted amendments"). Plaintiff's request for oral argument is **DENIED**.

IT IS SO ORDERED.


August 27, 2018                               s\Cathy Bissoon
                                              Cathy Bissoon
                                              United States District Judge


cc (via ECF email notification):

All Counsel of Record